# EXHIBIT 3

**POWELL GILBERT LLP**
**KÖNIGSALLEE 2B**
**5TH FLOOR**
**40212 DÜSSELDORF**
**GERMANY**

**T**   +49 (0)211 8199 7330
**W**   POWELLGILBERT.COM

**Per beA**

Regional Court Düsseldorf
Werdener Str. 1
40227 Düsseldorf

Düsseldorf, March 23, 2026

Our reference number: OCA1.33

<u>**VERY URGENT!!**</u>
<u>**TRADE FAIR MATTER**</u>

<u>**PLEASE FORWARD TO THE RESPONSIBLE CHAMBER IMMEDIATELY!**</u>

<u>**Application for an interim injunction**</u>

**Ocado Innovation Limited,** Buildings One & Two, Trident Place, Mosquito Way, Hatfield, Hertfordshire, AL10 9UL United Kingdom, represented by its management, at the same address.

– Applicant –

Legal representatives:                Powell Gilbert LLP, Königsallee 2B, 5th floor, 40212 Düsseldorf

against

**1. Brightpick sro,** Plynarenska 6, Bratislava 821 09, Slovakia
   <u>**Delivery address:**</u> Messe Stuttgart, Hall 8 Stand 8B25, Messepiazza 1, 70629 Stuttgart

– Respondent 1) –

and

**2. Brightpick Inc.,** 1830 Airport Exchange Blvd., Erlanger, Kentucky 41018, USA
   <u>**Delivery address:**</u> Messe Stuttgart, Hall 8 Stand 8B25, Messepiazza 1, 70629 Stuttgart

- Respondent 2) -



LONDON I **DÜSSELDORF** I DUBLIN

Powell Gilbert LLP ist eine Limited Liability Partnership nach englischem Recht und im Companies House unter der Nummer OC325818 registriert.
Eine Limited Liability Partnership nach englischem Recht ("LLP") ist ein eigenständiges, von ihren Gesellschaftern getrenntes Rechtssubjekt.
Die Haftung für Verbindlichkeiten der LLP ist auf das Vermögen der LLP beschränkt; die Gesellschafter haften nicht persönlich für die Verbindlichkeiten der LLP.
Powell Gilbert LLP unterliegt der Berufsaufsicht durch die Solicitors Regulation Authority und die Rechtsanwaltskammer Düsseldorf. Wir benutzen für die Gesellschafter der Powell Gilbert LLP die Bezeichnung Partner.
Die Partner der Powell Gilbert LLP sind: Simon Ayrton*, Zoë Butler*, Joel Coles*, Peter Damerell*, Penny Gilbert* (Mediator), Bethan Hopewell*, Rajvinder Jagdev*, Andreas Kramer** (Rechtsanwalt, Fachanwalt für gewerblichen
Rechtsschutz, UPC Representative), Siddharth Kusumakar*, Ari Laakkonen*, Bryce Matthewson* (Attorney of the High Court of South Africa), Tom Oliver*, Tess Waldron*, Tim Whitfield* und
Alex Wilson* (Solicitor of New South Wales, CEDR Mediator). Zusätzlich zu den vorstehend genannten individuellen Berufsqualifikationen sind die mit * gekennzeichneten Partner auch alle Solicitors (England & Wales),
Solicitors (Ireland) sowie zugelassene Vertreter vor dem Einheitlichen Patentgericht und in unserer Kanzlei in London tätig. Die mit ** gekennzeichneten Partner sind in unserer Kanzlei in Düsseldorf tätig.
Eingetragener Sitz der Powell Gilbert LLP ist London/Vereinigtes Königreich (85 Fleet Street, London EC4Y 1AE).
Powell Gilbert ist der Handelsname einer internationalen Anwaltssozietät bestehend aus der Powell Gilbert LLP und der Powell Gilbert (Europe) LLP.

| because of: | Patent infringement (German part of EP 3 374 291 B1) |
|---|---|
| Amount in dispute: | 1 million euros (preliminary estimate) |

On behalf of and by order of the applicant, we request the issuance of an interim injunction, due to the particular urgency, by the presiding judge alone. _____

For the same reason, the applicant requests that the decision be made without prior <u>oral proceedings.</u>
<u>to issue a hearing (ex parte)</u>, since otherwise the purpose of the present application would be thwarted in view of The upcoming product launch of the respondents at the trade fair would be jeopardized. The respondents' procedural rights remain protected, as the applicant had issued a cease-and-desist letter to the respondents (see below).

On behalf of and by order of the applicant, we **request** that the following be ordered:

1. The respondents shall be subject to a fine of up to €250,000 – or, alternatively, detention – to be determined by the court for each instance of non-compliance, or to detention of up to six months, in the case of repeated non-compliance of up to a total of two years, whereby the detention shall be served on the respective legal representatives of the

    Enforcement by the respondents is prohibited.

    a) Storage systems for storing articles in containers, the storage systems comprising:

    a first set of parallel rails or tracks and a second set of parallel
    Rails or tracks that are essentially perpendicular to the first set of
    Rails or tracks extend in a substantially horizontal plane to create a
    to form a grid pattern that includes a multitude of grid spaces;

    a set of stands, wherein the stands support the rails or tracks and the
    The stands and the tracks together form a framework;



a multitude of containers arranged in stacks below the tracks and within the framework, each stack within a footprint of a single

is arranged in a grid space and a section of the containers is a space below a occupies grid space;

to offer, place on the market or use in the Federal Republic of Germany or to import or possess for the aforementioned purposes,

the storage systems further include:

Robotic retrieval devices that are arranged above the containers and designed to operate on or above the rails or tracks of the storage system-
be used; wherein the at least one container located under the rails or railway tracks located, contains inventory items,

wherein the removal device is designed to dispense at least one stock item removes from at least one container and places the item(s) into at least one or more further containers and

wherein the extraction device is designed in such a way that it can hold at least one inventory-
removes the item from at least one container and places the item(s) into at least one or more further containers.

(Claim 1, EP 3 374 291 B1, direct infringement)

b) a method for removing stock items from a storage system, wherein the
The storage system consists of a first set of parallel rails or tracks and a second set of parallel tracks.
has a set of parallel rails or tracks that are essentially perpendicular
to extend to the first sentence in an essentially horizontal plane, in order to create a Git-
to form a pattern that has a multitude of grid spaces; a set of stand-
dern, wherein the uprights support the tracks and the uprights and the tracks together form a framework; a multitude of containers located under and within the tracks



LONDON I DÜSSELDORF I DUBLIN

3

Machine Translated by Google

of the scaffold, with each container located within a base area of the grid space

is arranged;

to be applied in the Federal Republic of Germany,

the procedure includes the following steps:

a. Locating at least one initial container containing a target container to be extracted.

  includes standard articles;

b. Locating at least one second container into which the target inventory item has been placed.

  to be laid;

c. Transferring at least one item from the at least one first container into

  the at least one second container; wherein

d. the article directly from the at least one first container into the at least one

  the contents of the second container are transferred through the dispensing device located on or above

  the grid.

(Claim 14, EP 3 374 291 B1, direct infringement)

c) Bearing system, wherein the bearing system comprises a first set of parallel rails or

  tracks and a second set of parallel rails or tracks which

  essentially perpendicular to the first sentence in an essentially horizontal direction

  Extend the plane to form a grid pattern that encompasses a multitude of grid spaces.

  indicates; a set of stands, the stands supporting the tracks and the stands and tracks together forming a

  framework; a multitude of containers arranged under

  the tracks and within the framework, with each container within a

  The base of the grid space is arranged

  in particular removal device, furthermore in particular robot removal device-

  gene,



which are suitable for a method of removing stock items from a

to apply a storage system

the procedure includes the following steps:

a. Locating at least one initial container containing a target container to be extracted.

includes standard articles;

b. Locating at least one second container into which the target inventory item has been placed.

to be laid;

c. Transferring at least one item from the at least one first container into

the at least one second container; wherein

d. the article directly from the at least one first container into the at least one

second container via the dispensing device located on or above the grid

is handed over

to offer to customers in the territory of the Federal Republic of Germany or to deliver to such customers-

remote

(Claim 14, EP 3 374 291 B1, indirect infringement)

2. The respondents shall bear the costs of the legal proceedings.

Should the Chamber not wish to issue the interim injunction ex parte, we request that the Chamber inform us of this before serving this application on the applicants.



## REASON:

## A.
## Background of the procedure

We present the following relevant circumstances to give the court a comprehensive picture of the circumstances. to convey the background of the present application.

## I.
## The applicant

The applicant Ocado is a company based in England, which is listed on the London Stock Exchange. Ocado is a food retailer. Founded in 2000, it has become the world's largest online supermarket. developed. As part of this, the applicant has become a technology leader. One of the Technology areas of great interest to the applicant are grid-based automated storage and retrieval systems (hereinafter also referred to as "AS/RS"), which include robot-assisted load handling devices and grid storage systems (which are also the subject of this (Legal disputes are ongoing). To date, Ocado has invested well over US$1 billion in the development and construction of its AS/RS systems, including its robotic load handling equipment. Ocado's innovative systems are used both in its own operations and by other companies. deployed in supermarkets (such as ICA, Casino and Auchan) to meet the demands of the online grocery business.

The applicant is the holder of industrial property rights in the field of warehouse automation-Engineering and robotics. In this context, it is also the registered and sole holder of the discretionary patent EP 3 374 291 B1 (hereinafter also: EP 291).

## II.
## The respondents

4. As far as the applicant is aware, respondents 1) and 2) (together the **Respondents)** to the Brightpick **Group of Companies,** headquartered in Austin, Texas, USA. Both respondents are jointly active in the field of automated storage and handling systems. They operate in the field of staging systems and market and sell their systems worldwide, including in Germany. Both respondents operate the website https://brightpick.ai/, on which also



the patent-infringing system ("Gridpicker") is being advertised, against which the present application is directed.

directs.

**Evidence:** The following screenshot of the website https://brightpick.ai/legal-notice/.

## Brightpick corporate information:

The company Brightpick s. r. o., a limited liability company organised under the Slovak law, with the registered seat at Plynarenska 6, Bratislava 821 09, ID No. (IČO): 47 353 309, registered with the Commercial Registry of Municipal Court Bratislava III, Section: Sro, Insert No.: 91452/B, operating under the registered trademark Brightpick.

The company Brightpick Inc., a foreign corporation organized under the law of Kentucky, with its registered seat at 1830 Airport Exchange Blvd., Erlanger Kentucky 41018 USA, Org. No. 1073228, registered with the Kentucky Secretary of State.

**Evidence:** The following screenshot of the website https://brightpick.ai/brightpick-launches-gridpicker/.

Austin, Texas, USA – March 17, 2026 – Brightpick, a leading provider of robotic automation for warehouses, is unveiling Gridpicker, a high-throughput grid-based fulfillment system run by AI-powered mobile manipulators, built on the company's widely deployed Autopicker technology.

Brightpick will provide an exclusive first-hand look at Gridpicker and announce its European launch partners at LogiMAT 2026, the international trade show for intralogistics in Stuttgart, Germany, on March 24, at 13:00 CET in Hall 8, Stand 8B25.

5 Also on their website, Jan Zizka, CEO of Brightpick, advertises the first live in-person event as follows:

Presentation of the Gridpicker system on March 24, 2026 at LogiMAT in Stuttgart:



Machine Translated by Google



6. Furthermore, the respondents monitor and control, insofar as the applicant is entitled to-known is the application, the offering and the distribution of the alleged infringement, under among other places in Germany.

**Proof** of the above-mentioned website screenshots:

> Affidavit by Ms. Lucy Wojcik, Head of the Patent Department of Applicant, together with a German machine translation submitted as
>
> **Annex PG 1 and PG 1a.**



8

**B.**

**Right of disposal**

**I.**

**Disposition patent:**

7 The disposition patent is the German part of EP 3 374 291 B1 **(EP 291)** with the following data. The German part has the file number DE 60 2016 077 960.9. The patent has a filing date of November 11, 2016, and claims a priority date of November 11, 2015, claiming priority from GB 201519929, GB 201519930, and GB 201519931. The application was published on September 19, 2018, and the patent was granted on February 22, 2023.

8 We present the disposition patent as well as an Espacenet machine translation of the patent application. spelling into German as

**Annex PG 2 and PG 2a.**

9. The applicant is the registered holder of the patent in question. A current extract from the register is available. It is presented from the register as

**Annex PG** 3.

10. An opposition was lodged against the disposition patent before the EPO. The opposition was rejected and the patent was confirmed in the granted form. The grounds for the decision of the Opposition Division of 2 June 2025 are submitted as

**Annex PG** 4.

11 An appeal is currently pending, based on the same arguments already presented in the first instance. The case has been examined. A hearing date has not yet been set.



LONDON I DÜSSELDORF I DUBLIN

9

## II.
### Subject of the disposition patent:

12 The invention of the patent entitled "PICKING SYSTEMS AND METHODS" relates to a storage-system for storing items in containers of dispensing systems and a method for the removal of stored items. More precisely, but not exclusively, it concerns a robot-assisted removal process for taking items from storage systems with stacked storage containers, the stacks being located within a grid structure, and with Extraction facilities.

### 1.
### Introduction, technical background:

13 As explained in the description of EP 291, storage systems are available from the prior art. known, where the storage and retrieval of items in multiple product lines involves the arrangement of The system comprises storage containers or bins in stacks arranged in rows. The storage containers are removed from the stacks and accessed from above by load handling devices, thus eliminating the need for aisles between the rows. are lich and more containers can be stored in a given space (see EP 291, paragraph [0002]).

Fourteen methods for handling containers stacked in rows have been known for decades. for example, in the form of freestanding stacks of containers arranged in rows to reduce the storage volume associated with storing such containers, but still in terms of load- may allow access to a specific container. Such a concept of use- The use of freestanding stacks of containers and the provision of a mechanism for removing and storing specific containers has been further developed over time.

15 For example, EP 0 767 113 B discloses a mechanism for extracting a variety of gesta- Containers are handled using a robotic load handler in the form of a rectangular tube that is lowered around the stack of containers and configured to grip a container at any height in the stack. In this way, multiple containers can be handled simultaneously. The movable tube can be used to lift containers from a stack. It can be used to move multiple containers from the top of one stack to the top of another, or to move containers from one stack to an external location and vice versa. Such systems



LONDON I DÜSSELDORF I DUBLIN

10

Machine Translated by Google

can be particularly useful when all containers in a single stack contain the same product – known as a single-product stack (see EP 291, paragraph [0004]).

16 Furthermore, EP 1 037 828 B1 describes a system in which stacks of containers are arranged within a frame structure. In such a system, robot-controlled load handling devices can be mounted on a rail system at the top surface of the stack.

moved in a controlled manner around the stack (see EP 291, para. [0006]).

17 To further improve the density of load handling equipment and thus the throughput of a To increase a system of a certain size, some well-known systems describe that each robot-controlled load handling device occupies only one grid space (see EP 291, para. [0008]).

Paragraph 18 [0009] of the patent in suit further describes – with reference to the patent application-

dung WO 9849075A1 – a known method for organizing the flow of goods for a Be-

The stand consisted of heterogeneous units arranged closely on top of and next to each other in stacked, standardized, cuboid containers, which were arranged in a vertical frame in groups of several The containers are connected in layers. Each individual container is mechanically lifted from the stack using one or more computer-controlled lifting devices with a gripping mechanism.

and transported for manual refilling or to a manual packaging station.

19 It follows that in the robotic removal systems described above, which are already known, robot-controlled load-carrying devices are controlled on a grid-shaped rail system.

the top of the stack is moved around. A specific load-bearing device lifts one.

Containers are lifted from the stack, the lifted container holding stock items needed to fulfill a customer order. The container is transported to a picking station where the required stock item is manually removed from the container and placed into a shipping container.

The delivery container can be placed, with the container being part of the customer order and being manually filled for dispatch at the appropriate time. At the picking station, the items can also be picked by industrial robots suitable for such tasks (see EP 291, para. 1).

[0010]).

20 such known robot-assisted picking systems, which remove stored items from storage containers into lie-

Removing containers can, however, lead to delays at the collection stations, which



LONDON I DÜSSELDORF I DUBLIN

11

This leads to queues at the collection points and delays in assembling customer orders. Furthermore, the collection points themselves represent a significant investment.

regardless of whether they are designed for manual or robot-assisted order picking-

are laid.

## 2.
## Task

According to the description of the patent in suit, the underlying design of the patent consists of The aim was to reduce the extent of manual intervention required in the system and the To increase the speed at which customer orders are assembled, which improves efficiency improved and reduces the costs of storage and retrieval systems with large containers (see paragraphs [0015], [0016]).

## 3.
## Solution

The solution results from independent claim 1 of the patent, which we will refer to below as a feature classification and numbering that corresponds to the designation of the features (here reproduced in the German wording of the claim) by the EPO in the unsuccessful opposition proceedings against the patent:

## Claim 1

F1    A system for storing items in containers, wherein the storage system comprises:

F2    a first set of parallel rails or tracks and a second set of parallel
Rails or tracks that are essentially perpendicular to the first set of
Rails or tracks extend in a substantially horizontal plane to form a grid pattern encompassing a multitude of grid spaces;

F3    a set of stands, wherein the stands support the rails or tracks and
the stands and the tracks together form a framework

F4    a large number of containers stacked below the tracks and within the
are arranged on scaffolding,

F5    where each stack is arranged within a base area of a single grid space,



LONDON I DÜSSELDORF I DUBLIN

12

F6      wherein a section of the containers occupies a space below a grid space;

characterized by the fact that the storage system also includes:

F7      Robotic removal devices positioned above the containers, and

F8      are designed in such a way that they are operated on or above the rails or tracks of the storage system; wherein

F9      the at least one container located under the rails or tracks, Inventory items include

F10     wherein the dispensing device is designed to remove at least one stock item from the at least one container and to dispense the item(s) into at least one or more further containers.

23 We present this feature breakdown as

**Annex PG 5**

24 According to the claimed technical teaching, the described bearing system of the ma-

The system's manual effort is reduced and the speed of compiling customer orders is increased, while simultaneously avoiding the disadvantages of the state of the art.

The storage system, which also includes a robot-assisted picking device, makes it possible to pick parts of the customer order, or some or all of the customer orders, directly from the wire mesh.

to order picking. This improves, among other things, the efficiency of the warehouse system and

the costs of such storage systems with large containers and order picking are reduced (see EP 291, paragraphs [0015], [0016]).

25 The problem is also solved by a method for removing stock items from a storage system, which is claimed in claim 14 of EP 291 and which we reproduce below.

ben:

**Claim 14**

F14.1 Method for removing stock items from a storage system wherein the storage system features



Machine Translated by Google

F14.2 a first set of parallel rails or tracks and a second set of parallel rails or tracks extending substantially perpendicular to the first set in a substantially horizontal plane to form a lattice pattern having a plurality of lattice spaces;

F14.3 a set of stands, wherein the stands support the tracks and the stands and the tracks together form a framework;

F14.4 a multitude of containers located beneath the tracks and within the scaffolding condition,

F14.5 each container is arranged within a base area of the grid space;

the procedure includes the following steps:

F14.6 a. Locating at least one first container containing a target to be removed In-stock items included;

F14.7 b. Locating at least one second container into which the target stock item is to be placed;

F14.8 c. Transferring at least one item from at least one first container to at least one second container; wherein

F14.9 d. the article is transferred directly from the at least one first container to the at least one second container by means of the dispensing device located on or above the grid.

26 We present this feature breakdown as

<u>**Annex PG** 6.</u>

**4.**
<u>**interpretatio**n</u>

27 The features of claims 1 and 14 are self-explanatory and should be understood in their usual sense. to be understood. For the sake of completeness, the applicant refers to the interpretation of two key points. Color in *"set of parallel rails or tracks"* and *"stack".*

28 First, features F2 and F14.2 refer to a *"set of parallel rails or* *"Railways".* This is explained in EP 291 in paragraph [0022], which states that the robot vehicle engages with *"two adjacent* *rails of the first set 22a of rails* 22" and that the wheels of the robot vehicle are also arranged in such a way that they are *"connected to two adjacent*



*The rails of the second set 22b engage with rails 22.* Accordingly, each set of parallel rails refers to two or more rails that are aligned in a specific direction.

get lost.

29 Secondly, features F4 and F5 in claim 1 refer to *"stacks".* This is relevant for claim 1, but not for claim 14, in which the term is not used. According to the usual meaning of "stack", the patent in question understands, according to paragraph [0018] of the description, that the containers *are "stacked on top of each other to form stacks".* This means that the containers of a stack are arranged vertically on top of each other.

**III.**

**Gridpicker system – the attacked embodiment**

30 The embodiment under attack is the so-called "gridpicker" system, which refers to the web-Sites of the applicants can be found at https://brightpick.ai/gridpicker/ and https://brightpick.ai/brightpick-launches-gridpicker/ Reference is made to the system, which is described by the applicants as a "Robotic Fulfillment System".

31 For illustration, we show below screenshots from the applicant's website. You can find them at https://brightpick.ai/gridpicker/ one, which shows the attacked embodiment:







## Robotic Picking

o Gridpickers robotically pick items directly from storage totes on the grid

o Speeds up order picking and maximizes labor savings

## A++ Movers

o The most popular SKUs are stored at the top of the grid, enabling instant access and fast picking

o No need to handle fast-moving products outside the system





LONDON I DÜSSELDORF I DUBLIN

16

32 In addition, there are several videos of the attacked embodiment in which this is shown in more detail This is explained; all videos were published on March 17, 2026 and are available on YouTube under following address available:

    a. https://www.youtube.com/watch?v=D4KM2DuLx5A titled *"Introducing the Gridpicker: the fastest warehouse robot ever built"* **(Brightpick-YouTube-Video** 1);

    b. https://www.youtube.com/watch?v=CAVg7wMff6U with the title *"The story behind Gridpicker: the fastest warehouse robot ever built"* **(Brightpick-YouTube-Video** 2); and

    c. https://www.youtube.com/watch?v=KpdYF3Owevo, with the title *"The fastest La- "The world's robot"* **(Brightpick YouTube video** 3).

**Evidence for the above:**

Affidavit from Mrs. Lucy Wojcik, already submitted as Exhibit PG 1.

**IV.**
**Direct infringement of claims 1 and 14 of EP 291**

33 The direct infringement of claims 1 and 14 is explained below by means of an explanatory note. The results are presented in a tabular overview.

**1.**
**Claim 1 (System)**

| No. | Characteristic of the claim | Implementation by the defendant's grid picker system |
|---|---|---|
| F1 | A system for storing items in containers, whereby the Storage system includes: | In the Brightpick YouTube video 3, at 0:10 it says Voice-over: *"Gridpicker unlocks the full potential of your warehouse, offering higher throughput than any other fulfillment system, maximum storage density, and up to 95% personnel savings through end-to-end processes."* |



| | | *Automation of order picking, buffering and sorting.* |
|---|---|---|
| F2 | a first set of parallel rails or<br><br>Lanes and a second set of parallel<br>Rails or tracks that are essentially perpendicular to the first set of rails or<br><br>Paths extend in an essentially horizontal plane to form a grid pattern that includes a multitude of grid spaces; | Brightpick YouTube video 1 at 0:10 shows that there is at least one set of parallel rails or tracks (highlighted in green) and a second set of parallel rails or tracks (highlighted in red) that extends essentially perpendicular to the first set of rails or tracks.<br><br><br><br>These rail sets are essentially horizontal<br>laid out to form a grid pattern with a multitude of grid spaces |
| F3 a set of stands, where the stands are the rails or<br><br>tracks carry and the<br>Stands and the tracks together a<br>Forming a framework;; and | | The stands that support rails or tracks,<br>The framework formed by the tracks is directly visible in the screenshot from the Brightpick YouTube video 1 at 0:12, see also the highlighted screenshot. |

pg.

LONDON I DÜSSELDORF I DUBLIN

| | | |
|---|---|---|
| | | feature    F4.<br><br>![feature F4 image] |
| F4 a multitude of containers arranged in stacks below the tracks and within the scaffolding, | | See below the annotated excerpt of a screenshot from the Brightpick YouTube video 1 at 0:12, showing an example of a stack of containers (multiple containers stacked on top of each other) highlighted in red, with the note that such a stack is located under a green highlighted part of the tracks or railway lines.<br><br>![annotated screenshot] |
| F5 where each stack is within a base area of a single<br><br>is arranged in the grid space. | | Brightpick YouTube video 1 at 0:07 shows that the top container of each stack is located within a single grid space, see screenshot: |



LONDON I DÜSSELDORF I DUBLIN

| | | |
|---|---|---|
| | | |
| F6 where a section of the containers space below a occupies grid space; | Brightpick YouTube video 1 at 0:17 shows that the Containers are located below the rails and thus occupy a space below the grid space, with further containers located below the uppermost containers. | |
| | characterized by the fact that the storage system continues to include: | See claim features F7 to F10 below. |
| F7 Robotic removal devices arranged above the containers, and | The Brightpick YouTube video 1 shows at 0:10 a robot with a robot gripper hand (highlighted in green) positioned above the containers, see the annotated screenshot below. | |



pg.

LONDON I DÜSSELDORF I DUBLIN



| | | |
|---|---|---|
| F8 are designed in such a way that they are operated on or above the rails or tracks of the storage system; wherein | | Brightpick YouTube video 1 shows at 0:10 a robot with a robot gripper hand that can be operated on or over the rails or tracks of the Gridpicker system, see image above. |
| F9, which is at least one<br>Container located under the rails or<br>The tracks are located and contain inventory items. | | See the screenshot below from the Brightpick YouTube video 1 at 0:10, which shows a container located under the rails or tracks, the inventory items of which are highlighted in green. |

pg.

LONDON I DÜSSELDORF I DUBLIN

21

| | | |
|---|---|---|
| | |  |
| F10 wherein the dispensing device is designed to remove at least one stock item from the at least one container and to dispense the item(s) into at least one or more further containers. | | Brightpick YouTube video 2 at 1:25 shows the robot picking hand picking up an inventory item from a container.<br><br><br><br>The Brightpick YouTube video 2 at 1:27 then shows that the robot picking hand is picking the stock item.<br><br>removed from a container |

pg.

LONDON I DÜSSELDORF I DUBLIN



and placed the item in another container.

**2.**

**Claim 14 (Procedural Claim)**

| # | Claim feature implementation through the grid picker system of the Be-complained |
|---|---|
| F14.1 Procedure for removal from | The following screenshot is from the website of the respondents (https://brightpick.ai/gridpicker/)                           , |



| | Stock items from a storage system, wherein the storage system comprises: | shows that the Gridpicker system enables robots to pick stock items directly from containers in a storage system.<br><br><br><br>**Robotic Picking**<br><br>○ Gridpickers robotically pick items directly from storage totes on the grid<br><br>○ Speeds up order picking and maximizes labor savings |
|---|---|---|
| F14.2 a first sentence | of parallel rails or tracks and a second<br><br>Set of parallels Rails or tracks that are essentially perpendicular to the first sentence in an essentially horizontal direction<br><br>Extend the plane to form a grid pattern that is<br><br>It features a large number of grid spaces; | See claim feature F2 above. |
| F14.3 a set of uprights, wherein the | uprights support the tracks and the uprights and the tracks together form a framework; | See claim criterion F3 above. |
| F14.4 a multitude of containers | located beneath the tracks and | See claim feature F4 above. |

pg.

LONDON I DÜSSELDORF I DUBLIN

| | | |
|---|---|---|
| | are located within the framework, | |
| F14.5 | each container is arranged within a base area of the grid space; | See claim feature F5 above. |
| | the procedure includes the following steps: | See claim features F14.6 to F14.9 below. |
| F14.6 | a. Locating at least one initial container containing a target inventory item to be withdrawn; | The Brightpick YouTube video 2 shows at 1:25 that the robot picking hand has removed an inventory item (target inventory item) from a container, which requires the localization of this container that contains the specific item to be removed.<br><br> |
| F14.7 | b. Locating at least one second container into which the target inventory item is to be placed; | Brightpick YouTube video 2 at 1:27 shows that a second container, into which the target inventory item is to be placed, has been located (namely the green highlighted container extending outwards from the robot): |



| F14.8 c. | transfer at least one article from at least one first container into at least one second container; wherein | Brightpick YouTube video 2 at 1:27 shows the transfer of an item (highlighted in blue) from a container (highlighted in red, the first container according to F14.6) into another container (highlighted in green, the second container according to F14.7), see the annotated screenshots below, in chronological order.<br><br> |



LONDON I DÜSSELDORF I DUBLIN

26





| | | |
|---|---|---|
| F14.9 d. the article is transferred directly from the at least one first container to the at least one second container by means of the dispensing device located on or above the grid. | See the annotated screenshots above regarding the features of F7 and F14.8.<br><br>The removal device is the robot removal hand highlighted in green in claim features F7 above in the annotated screenshot, which is located on or above the grid.<br><br>Furthermore, it can be seen that the robotic removal hand in the annotated screenshots in claim F14.8 above causes the article to be transferred directly from one container to another. | |

**Proof of the above-mentioned photos:**

Affidavit from Mrs. Lucy Wojcik, already submitted as an attachment.

location PG 1.



## V.
## Injurious acts by the defendant

34 As already explained above, the respondents market and sell their systems including the "Gridpicker" system worldwide, including in Germany.

35 In particular, the respondents operate, as can be seen from the imprint already inserted above. As can be seen, they jointly use the website https://brightpick.ai/. There you will also find the press release from March 17, 2026, announcing the "world premiere" of the Gridpicker system *"at LogiMAT 2026, the international trade fair for intralogistics in Stuttgart, Germany, on March 24 at 1 p.m."*

The applicant will be present *at the exhibition in Hall 8, Booth 8B25, at the same time* . The respondent (1) is listed in the directory of LogiMAT trade fair is registered as the responsible exhibitor, as shown below.

Screenshot        under        https://www.logimat-messe.de/en/fair/exhibitor-directory#/search/f=h-entity_orga,brightpick;v_sg=0;v_fg=0;v_fpa=FUTURE It is evident:



36 We are providing a screenshot from the Brightpick press release website dated 17.

March 2026 at https://brightpick.ai/brightpick-launches-gridpicker/ as

## Annex PG 7.

**Proof:** Affidavit from Ms. Lucy Wojcik, already submitted as an attachment.

location PG 1.



37 Furthermore, both the Brightpick YouTube video 1 and the Brightpick Y-

YouTube video 2 and statements on their website include a live presentation of the Gridpicker system.

at LogiMAT on March 24, 2026 at 1 p.m. in Hall 8.

38 In view of this, the respondents jointly offer the infringing embodiment to

their website (https://brightpick.ai/gridpicker/) Customers worldwide, including customers in

Germany.

39 Furthermore, the photos taken by Ocado at the exhibition grounds on March 21, 2026 show

Stuttgart in Germany (where the market launch of Gridpicker is scheduled for March 24, 2026) has

noted that the respondents on site are considering implementing Gridpicker-

systems, as can be seen in the following photos:



**Proof of the above-mentioned photos:**

Affidavit from Mrs. Lucy Wojcik, already submitted as an attachment.

location PG 1.

40 In this context and in accordance with the respondents' online announcement

The respondents intend to bring the contested embodiment to market.

and to use them worldwide and specifically in Germany on and from March 24, 2026 at 1 p.m.

zen and to offer.



41 In this context, the respondents have, to the best of the applicant's knowledge, disclosed the contested embodiment and the contested method to third parties worldwide, including in Germany, at least offered, and there is certainly an immediate and concrete danger, that the upcoming worldwide product launch will lead to resulting disruptions Buying in Germany is coming.

**VI.**

**Special conditions for an indirect infringement of claim 14**

42 The contested embodiment is a means which relates to an essential feature of the invention-The invention relates to means mentioned in the patent claim itself. These means generally relate to an essential feature of the invention, since the patent claim determines which subject matter is protected by the patent (cf. e.g. BGH GRUR 2004, 758 (761) – impeller counter; BGH GRUR 2007, 769 para. 18 – Pipette system; BGH GRUR 2007, 773 para. 14 – Pipe welding device; BGH GRUR 2015, 467 para. 58 – Audio signal coding). The means must be suitable for functionally combining the realization of the protected inventive concept with one or more features of the Pa-to cooperate with the other claims (cf. e.g. BGH GRUR 2004, 758 (761) – impeller counter). This is the case here, since the features of the system offered by the respondents are means mentioned in claim 14 of EP 291. In addition, they cooperate with the other Features of claim 14 together, since the claimed method requires the removal of products from a specific storage system, which is achieved by the method proposed by the applicants. The offered system is implemented. This applies in particular to the robot removal devices, which directly contribute to the realization of the core of the inventive doctrine.

43 As explained above in relation to the infringement, the system offered is objectively suitable for use in realizing the invention claimed in claim 14 of EP 291. The respondents are also aware that the system is intended by their customers for use in the method claimed in claim 14, as this is demonstrated, for example, in the videos on their website. There is no other way in which this system could or should be used.

44 Finally, as demonstrated and confirmed by the product launch at the trade fair in Stuttgart, the offer is also aimed at Germany, and customers in Germany would like to see the



LONDON I DÜSSELDORF I DUBLIN

30

Machine Translated by Google

Products for implementing the claimed process are used in Germany. This also fulfills the requirement of a dual domestic connection.

## C.
## Reason for the order

It is acknowledged that the grounds for issuing an interim injunction lie in the urgent-keit for the regulation of the disputed facts. According to established case law, the The "urgency" that the plaintiff must demonstrate is not to be understood purely in terms of time. Rather, there must also be an objective justification for the preliminary injunction, based on the disadvantages that the rights holder would face without judicial intervention. Therefore, a balancing of interests is required. a process which also ensures the sufficient safeguarding of the legal validity of the patent in question to be taken into account. Furthermore, the balancing of interests must also consider the extent to which the legal assessment of the patent in suit and the infringement situation constitute a significant risk. Allow sufficient clarification in summary proceedings.

All these conditions are met in the present case, and the balancing of interests also falls The decision is in favor of the applicant; because the question of infringement can be clearly assessed even in a summary examination, the legal validity of the patent in suit is secured, the The applicant has demonstrated the urgency of the matter, and the balancing of interests also supports this. for the issuance of the requested preliminary injunction.

In detail:

## I.
## Secure legal validity of the disposition patent

There is sufficient certainty that EP 291 is legally valid and that the patent is infringed. is being infringed or such an infringement is imminent. According to the case law of the European Court of Justice, patents granted by the European Patent Office enjoy a presumption of validity ( [1] ).

---

[1] See, for example, ECJ judgment of 28 April 2022 *(Phoenix Contact v Harting),* C-44/21, ECLI:EU:C:2022:309, para. 41; ECJ judgment of 30 January 2020 *(Generics (UK)),* C-307/18, ECLI:EU:C:2020:52, para. 48.



47 Furthermore, EP 291 was already rejected in opposition proceedings before the EPO

subjected to a comprehensive examination and found to be patentable in the version granted and

This is therefore confirmed. We refer in this respect to the decision already submitted in Annex PG 4.

Reasons of the Opposition Division.

48 As can be seen from this decision of the Opposition Division, EP 291 was unsuccessful because

allegedly inadmissible extension, lack of novelty and lack of inventive step

The objection was challenged, with the opponent basing his objection on eleven prior art documents and

submitting extremely extensive written submissions (a total of 147 pages).

An appeal is currently pending against the decision of the Opposition Division. The first-

Nevertheless, a decision by a court of law offers a high degree of security for the legal representative.

The decision was made, especially since no new objections had been raised.

## II.
## urgency

49 The present matter is extremely urgent, so that not only a decision in the way

not only is an interim injunction required, but the decision must also be made without prior oral proceedings.

50 According to established case law, the urgency period begins to run as soon as the applicant has knowledge of

the infringing act in question and the person responsible for it, and has all the information and evidence to be

able to file an application for an interim injunction with a prospect of success. These conditions are clearly met,

as the applicant took action within a few days of becoming aware of the injury.

51 On 17 March 2026, Ms. Lucy Wojcik, Head of the Patent Department of the applicant and

responsible for patent disputes of the applicant, was made aware of the online announcement of the

respondents dated March 17, 2026, according to which they would discontinue their Gridpicker system on the 24th.

would be introduced in March 2026 at 1 p.m. in Stuttgart, Germany.

52 Following immediate internal consultations, it informed and instructed the applicant's representatives

in the present procedure.



Machine Translated by Google

**Evidence:** Affidavit from Mrs. Lucy Wojcik, already submitted as Exhibit PG 1.

### III.
### Balancing of interests

53 In addition to the secure legal validity of the disposition patent and the urgency, the following prevail: The interests of the applicant also far outweigh those of the respondent in the balancing of interests required for the issuance of an interim injunction.

54 The central point is that the infringement of the patent in suit can be established without difficulty; it follows directly from the foregoing. In this respect, the technical facts are clear and require neither in-depth scientific nor technical knowledge. nor the involvement of an expert.

55 Furthermore, in the balancing of interests in favor of the applicant, the following must be taken into account: The applicant argues that the respondents and Ocado are competitors in the market for automated storage systems and that the respondents are infringing the applicant's intellectual property rights. In particular, Ocado will be presenting its own automated storage solution with robotic picking devices at the upcoming LogiMAT trade fair. Therefore, the market launch of the respondents' competing robotic picking system will cause Ocado irreparable harm with regard to its ability to exploit its proprietary technology.
This is especially true given the international nature of the trade fair and the announced "Worldwide market launch" of the infringing system. There is an immediate risk that sales of this system will occur, potentially causing the applicant immediate harm. will cause losses.

**Proof of credibility:** Affidavit from Ms. Lucy Wojcik, already submitted as an attachment. PG 1.

56 Furthermore, it is likely that the respondents deliberately waited until shortly before the trade fair to announce the product launch for the first time in order to prevent rights holders from exercising their rights to enforce.



57 All these circumstances, taking into account the case law, regularly lead to the conclusion that the The balancing of interests favors the applicant.

58 In view of all this, the applicant cannot reasonably be expected to proceed with a main action. be referred.

**IV.**

**Decision without oral proceedings**

Given the extremely high urgency of the matter and the clear facts of the case-
Given the obvious violation and the validity of the legal position, the decision must be made without an oral hearing. This applies particularly because the applicant had previously notified the respondents.
issued a warning notice with a deadline. The warning letter was sent by email on the night of the 22nd.
Please send your application by March 23, 2026 to the contact address info@brightpick.ai. as stated on the respondent's website https://brightpick.ai/ , it was sent. The CEO of was also copied.
Brightpick, Mr. Jan Zizka. The email and letter are being delivered as

**Annex PG** 8.

59 Furthermore, the warning letter was printed out and distributed by employees of the respondent on the morning- The letter will be handed over to representatives of Brightpick at the trade fair grounds on the morning of March 23, 2026. Furthermore, it is legally assured that the undersigned will send the cease and desist letter by direct- message sent on the morning of March 23, 2026 via LinkedIn to both the CEO, Mr. Zizka, and to which was sent to the CTO, Mr. Kovacovsky, see screenshots below:





60 The aforementioned letter describes the infringement of rights in accordance with the sections mentioned above. explained and referred to the confirmation of the legal validity of the patent in the opposition proceedings. The applicant also pointed out the pending complaint there. She requested that the respondents submit a cease-and-desist declaration by 1:00 PM CET on March 23, which is appropriate given the extreme urgency of the matter. A response-

No action was taken in this regard. Thus, the respondents' procedural right to be heard was preserved.

**D.**
**Further legal explanations**

61 The asserted claim for injunctive relief arises from Sections 139 in conjunction with 9 and 10 PatG (see above, also regarding the specific requirements for indirect infringement).



Machine Translated by Google

62 The Düsseldorf Regional Court, Chamber for Patent Disputes, has subject-matter and territorial jurisdiction, as this is a patent dispute within the meaning of Section 143 of the Patent Act and the respondents are the The attacked embodiment also applies throughout the entire territory of the Federal Republic of Germany (further- offer and distribute, or are about to distribute (risk of initial infringement). This offer is made on the respondents' international website, which is aimed at customers worldwide, including in Germany, and where English is the general business language.

which is in this area. That the respondents market the product "Gridpicker" among other things in

The fact that they offer their products in Germany is further evidenced by their product launch at the trade fair in Stuttgart.

63 The enforcement of the requested interim injunction is not subject to a security deposit.

to make it dependent. In particular, the provision of security should not be ordered if it cannot be provided within the short available time, e.g., in the context of trade fairs (see Higher Regional Court of Düsseldorf, judgment of September 12, 2025, file number 2 U 60/25; *Kühnen,* Handbook of Patent Infringement, 16th edition, Chapter G.II, para. 141). This applies in particular

for the present case, in which the product launch was publicly announced for March 24, 2026, the first day of the three-day LogiMAT trade fair in Stuttgart.

64 We request notification by telephone on 0211 8199 7336 and/or by email (andreas.kramer@powellgilbert.com) as soon as the requested preliminary injunction has been issued, but also in the event that the court considers further explanations or substantiations necessary or should be of the opinion that a preliminary injunction cannot be issued without hearing the opposing party.

Dr. Andreas Kramer                    Hannes Obex
(Lawyer)                              (Lawyer)



LONDON I DÜSSELDORF I DUBLIN